**SO ORDERED.**

**SIGNED this 6 day of June, 2018.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-02135-5-DMW |
| **FIRST FRUITS HOLDINGS, LLC** | |
| | **CHAPTER 11** |
| **DEBTOR** | |

### ORDER DENYING MOTION TO TRANSFER VENUE

This matter comes before the court upon the Motion of the United States Bankruptcy Administrator Pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1) to Transfer Case to the District of Idaho ("Motion") filed by Marjorie K. Lynch, Esq. ("BA"), United States Bankruptcy Administrator for the Eastern District of North Carolina, on May 3, 2018; the Joinders thereto filed respectively by KeyBank National Association ("KeyBank") on May 9, 2018 and Four Rivers Land, LLC, Four Rivers Packing Co., and N.J.R. L.L.C. (collectively "Idaho Creditors") on May 9, 2018; and the Objections thereto filed respectively by Belfor USA Group Inc. ("Belfor") on May 7, 2018 and First Fruits Holdings, LLC d/b/a Four Rivers Onion Packing ("Debtor") on May 9, 2018. The court conducted a hearing on May 10, 2018 in Raleigh, North Carolina. Brian C. Behr, Esq. appeared for the BA, Luis M. Lluberas, Esq. appeared for KeyBank, Craig A. Stokes, Esq. appeared for the Idaho Creditors, William P. Janvier, Esq. appeared for

Belfor, and Trawick H. Stubbs, Jr., Esq. and Blake Y. Boyette, Esq. appeared for the Debtor. Based upon the evidence presented and arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). *See In re Baltimore Food Sys., Inc.*, 71 B.R. 795, 796-97 (Bankr. D.S.C. 1986) (citations omitted) (holding that a motion to change the venue of a bankruptcy case is a core proceeding as a matter concerning the administration of the estate). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on April 27, 2018 and is a debtor-in-possession pursuant to 11 U.S.C. § 1107.

3. The Debtor is a limited liability company organized on or about May 29, 2015 under the laws of the State of North Carolina and maintains an office located at 8510 Six Forks Road, Suite 102, Raleigh, North Carolina. That office is listed in the petition as the Debtor's principal place of business. The Debtor was organized for the purpose of acquiring and operating an onion packing and distribution facility located in Weiser, Idaho. The Debtor ceased its operations pre-petition on January 28, 2018 and intends to liquidate under the purview of Chapter 11.

4. The Debtor's Statement of Financial Affairs reflects that it has three managing members: Mark H. Black located in Raleigh, North Carolina, owning a 34% interest; John T. Fowler located in Wake Forest, North Carolina, owning a 36% interest; and Sean P. Swanson

located in Weiser, Idaho, owning 20%. The remaining 10% interest in the Debtor is owned by members Pamela and Samuel Clark located in Oviedo, Florida.

5.   The Debtor's Schedule A/B reflects that, aside of financial accounts, its principal real and personal property assets are located in Weiser, Idaho.

6.   The Debtor purchased its business and assets from the Idaho Creditors, which provided seller financing. Additional financing was obtained from KeyBank which has a principal place of business in Ohio. The Idaho Creditors and KeyBank hold liens on most of the Debtor's real and personal property assets and are the largest secured creditors in the case. Belfor is the Debtor's largest unsecured creditor and is located in Idaho. The Debtor's Schedules D and E/F reflect that the remaining secured and unsecured creditors are all located outside of North Carolina.

7.   In the Motion, the BA submits that the District of Idaho is a more appropriate venue for this bankruptcy case due to the location of the Debtor's assets and creditors. In its Objection, the Debtor notes that its majority member shareholders, Mr. Black and Mr. Fowler, are responsible primarily for the Debtor's operations and are both located within the Eastern District of North Carolina.

8.   Mr. Fowler testified at the hearing that he and Mr. Black are the sole decision-makers for the Debtor. Mr. Fowler has worked in the farming and produce business for over 20 years and has overseen potato and onion operations. When the business was purchased, Mr. Fowler believed that he and Mr. Black were competent to manage the operations from North Carolina, and they did so until the business was adversely affected by unprecedented snow storms in Idaho. Although Mr. Fowler travelled occasionally to Idaho, his presence in Idaho was unnecessary to the operations and future visits are unlikely. Site managers and employees located

in Idaho had no authority deciding issues relating to the Debtor's onion contracts and will not be involved in the Chapter 11 liquidation and dissolution of the Debtor's business.

9. Appropriate venues for a bankruptcy case are defined in 28 U.S.C. § 1408 which provides that—

> a case under title 11 *may* be commenced in the district court[1] for the district—
> (1) in which the domicile, residence, principal place of business in the United States, *or* principal assets in the United States, *or* the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
> (2) in which there is pending a case under title 11 concerning such person's affiliation, general partner, or partnership.

28 U.S.C. § 1408 (emphases added). This court previously noted that this section "is written in the disjunctive; therefore, 'allow[ing] many possible locations where an entity or individual may file for bankruptcy protection[,]' as long as one of the following four alternative tests for venue is satisfied: the debtor's (1) domicile; (2) residence; (3) location of principal place of business in the United States; or (4) location of principal assets in the United States." *In re Honeycutt*, No. 12-06921-8-JRL, 2012 WL 6681833, at *2 (Bankr. E.D.N.C. Dec. 21, 2012) (quoting *Broady v. Harvey (In re Broady)*, 247 B.R. 470, 472 (B.A.P. 8th Cir. 2002) (other citations omitted)).

10. The United States Supreme Court holds that the statutory phrase "'principal place of business' is best read as referring to that place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181, 1192, 175 L. Ed.2d 1029, 1041 (2010). Mr. Fowler's testimony supports that, despite the

---

[1] In this district, like most other federal districts, cases under title 11 are commenced in the bankruptcy court, which is a unit of the district court compromised of its bankruptcy judges who have referred subject matter jurisdiction of cases under title 11 pursuant to 28 U.S.C. §§ 1334 and 157(a) and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

4

operations in Idaho, the direction and control of those operations originate in this district; therefore, venue in this court is proper as being the location of the Debtor's principal place of business. Nevertheless, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. *See also* Fed. R. Bankr. P. 1014(a)(1).[2]

11.     As correctly noted by the BA, when considering whether either the interests of justice or the convenience of the parties supports a transfer of venue, this court looks to the following factors ("*Commonwealth Oil* Factors") considered by the United States Court of Appeals for the Fifth Circuit:

> (1) the proximity of creditors of every kind to the court;
>
> (2) the proximity of the debtor to the court;
>
> (3) the proximity of witnesses necessary to the administration of the estate;
>
> (4) the location of the assets;
>
> (5) the economic administration of the estate; and
>
> (6) the necessity for ancillary administration if a liquidation should occur.

*In re Spartan Holding Co., Inc.*, No. 11-02355-8-RDD, 2011 WL 5909502, at *2 (Bankr. E.D.N.C. May 24, 2011) (quoting *In re Mid Atlantic Retail Group, Inc.*, No. 07-81745, 2008 WL 612287, at *4 (Bankr. M.D.N.C. Jan. 4, 2008) (citing *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 569 F.2d 1239, 1247 (5th Cir. 1979))).

---

[2] "**Cases Filed in Proper District.** If a petition is filed in the proper district, the court, on timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States [bankruptcy administrator], and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1).

12. At first glance, the BA's and joining creditors' arguments that venue for this case is more appropriate in Idaho seem logical given that the business operated in Idaho and its assets remain there; however, after hearing Mr. Fowler's testimony and considering the *Commonwealth Oil* Factors in concert with the anticipated process for the case, the court concludes that a transfer of venue is not warranted. The court will address its reasoning as to each of the *Commonwealth Oil* Factors:

a. <u>Proximity of Creditors</u>. The BA emphasizes that while not all of the Debtor's scheduled creditors are located in Idaho, there are no creditors located in North Carolina. In joining in the BA's Motion, neither KeyBank nor the Idaho Creditors has demonstrated how Idaho is a more convenient venue for them as creditors. The Idaho Creditors are indeed located in Idaho but have retained counsel based in Texas. That counsel has a nationwide agricultural practice and is licensed in both Idaho and North Carolina. The court suspects that the Idaho Creditors would use this same counsel regardless of the case's venue. KeyBank maintains a presence in Idaho but is based corporately in Ohio and has already retained competent counsel in North Carolina. KeyBank is a savvy financial institution that is undoubtedly accustomed to being represented in varying jurisdictions and will not be prejudiced by the Debtor's choice of venue. The court cannot ignore that Belfor, which is located in Idaho and appears to be the Debtor's largest unsecured creditor, supports the Debtor's choice of venue. At this point, the unsecured creditors appear to have far more at stake in this case than the secured KeyBank and Idaho Creditors. The Idaho Creditors proffered unfiled notices of joinder in the BA's Motion executed by two unsecured creditors located in Idaho and another located in Oregon, presumably solicited by the Idaho Creditors. The court recognizes that perhaps

it is the smaller unsecured creditors that are most negatively impacted by the case proceeding in North Carolina; however, this prejudice is outweighed by other *Commonwealth Oil* Factors discussed *infra* and the Debtor's choice of a proper venue.

      b.      <u>Proximity of Debtor</u>.  In *Commonwealth Oil*, the Fifth Circuit opined that when considering the proximity of the debtor, "[t]he concern is with the corporation's employees who must appear in court, not with the employees who are on the production line." *Commonwealth Oil*, 596 F.2d at 1248.  In this case, Mr. Fowler is the officer ordered to appear at the Debtor's meeting of creditors pursuant to 11 U.S.C. § 341, and he and Mr. Black will be the appropriate witnesses at future hearings involving anticipated matters, such as approval of use of cash collateral, claim objections, and confirmation of a plan.  In addition to its management personnel, the Debtor's corporate records are located in this district, and the Debtor uses an accountant in Raleigh, North Carolina.

      c.      <u>Proximity of Witnesses</u>.  Beyond the representative officers of the Debtor, the court does not anticipate that this liquidating case will require significant witnesses as part of the administration.

      d.      <u>Location of Assets</u>.  This factor is the only *Commonwealth Oil* Factor that favors a transfer of venue; however, Mr. Fowler's testimony persuades the court that the Debtor's assets in Idaho can be efficiently administered from this district.  Both the real property and personal property are secured, no longer being used, and can be liquidated through employment of experienced brokers and auctioneers.  This court has in many other cases allowed the employment of out-of-state professionals and rarely has their attendance in court become necessary.

  e. <u>Economic Administration of Estate</u>.  In *Commonweath Oil*, the Fifth Circuit affirmed the United States Bankruptcy Court for the Western District of Texas in declining to transfer venue of the case to the District of Puerto Rico, finding that—

> [t]he bankruptcy court correctly concluded that the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate.  On the efficiency side, San Antonio is clearly the favored district.  The heart of a Chapter XI[3] proceeding is working up a financial plan of arrangement acceptable to all relevant parties.  The people charged with this responsibility in [the debtor's] management are all located in San Antonio.

*Id.* at 1247.  Similarly, the people charged with formulating an acceptable plan for the Debtor, specifically Mr. Fowler and Mr. Black, are located within the Eastern District of North Carolina.  The case will be more economically and efficiently administered from this district.

  f. <u>Ancillary Administration if Liquidation Occurs</u>.  This *Commonwealth Oil* Factor is not wholly relevant in this case which initially contemplates liquidation.  Orderly liquidation through a Chapter 11 plan can be effectuated by the Debtor's managers located in North Carolina.  Should a trustee become necessary, either within Chapter 11 or upon conversion to Chapter 7, the closer venue to the assets would probably benefit a professional new to the case; however, it is unlikely that the services of a trustee will be needed in this case.  Also, as the Fifth Circuit stated, "[a]nticipation of the failure of the Chapter XI proceeding is an illogical basis upon which to predicate a transfer." *Id.* at 1248 (quoting *In re Fairfield Puerto Rico*, 333 F. Supp. 1187, 1191 (D. Del. 1971)).

13. In support of the Motion, the BA and joining creditors cite a recent and similar case in which the neighboring United States Bankruptcy Court for the Western District of North

---

[3] *Commonwealth Oil* was decided prior to the Bankruptcy Reform Act of 1978.  The previous bankruptcy statutes referred to Chapter 11 as "Chapter XI."

8

Carolina transferred venue to the District of North Dakota, where the debtor's meaningful assets and business activities were located. *In re Grand Dakota Partners, LLC*, 573 B.R. 197 (Bankr. W.D.N.C. 2017). In this case, the jointly administered debtors had a principal place of business in Charlotte, North Carolina but operated in North Dakota a full-service hotel with restaurant, bar, and conference facilities. *Id.* at 199. While the corporation and principal with primary decision-making authority were located in Charlotte, most decisions were made in collaboration with or deferred to an Iowa corporation that oversees the day-to-day on-site operation of the hotel. *Id.* at 199-200. The principal periodically visited the hotel, and the court believed that future visits could be coordinated to coincide with attending bankruptcy hearings in North Dakota. *Id.* at 204.

14. The *Grand Dakota* debtors were parties to over 70 executory contracts related to the operations, with the majority of the counterparties to those contracts being located in North Dakota. *Id.* at 200. The court found that the location of these parties and a majority of the debtors' other creditors in North Dakota combined with the hotel and related operational assets also being located there weighed heavily in favor of transfer. *Id.* at 203. The court believed that the formation and functioning of an unsecured creditors' committee would be more successful in North Dakota. *Id.* at 202.

15. *Grand Dakota* is distinguishable from the present case in that it involved a large, income-producing business seeking reorganization within continuing transactions with local creditors. If the Debtor's business were continuing to operate, then perhaps administration where the business is located would make sense, but this case is intended as an orderly liquidation. Formation of and participation by a creditors' committee is neither likely nor feasible as related administrative costs incurred by the committee would only reduce the ultimate distribution to unsecured creditors. Unlike the principal in *Grand Dakota*, Mr. Fowler and Mr. Black do not

9

travel regularly to the alternate venue. As they are the most likely witnesses in the case, the cost of their travel to Idaho to represent the Debtor would be another unnecessary administrative expense charged against the estate.

16. Transferring venue of a bankruptcy case should not be taken lightly, and a debtor's choice of forum is entitled to great weight if venue is proper. *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (citations omitted). Parties seeking a transfer of that venue "bear the burden of proof and must show by a preponderance of the evidence that the interest of justice or the convenience of the parties would be served by a transfer of [the] case." *Mid Atlantic Retail*, 2008 WL 612287, at *3 (citations omitted). The BA and joining creditors concede that the Debtor's case was properly commenced within this district, and these parties have not met their burden or convinced the court that it should disturb the Debtor's choice of venue; now therefore,

It is ORDERED, ADJUDGED, and DECREED that the Motion be, and hereby is, denied.

**END OF DOCUMENT**